UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ARNOLDO MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-0163-C |
| | § | ECF |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Arnoldo Martinez seeks judicial review of a decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the court reverse the Commissioner's decision.

**I.   Administrative Record**

Martinez filed his applications for DIB and SSI alleging he was unable to work because of pain in his waist, back, and hands. (Tr. 81.) He also alleged that he suffered from depression and experienced anger and anxiety. (Tr. 94, 97.) Physicians have diagnosed Martinez with various psychological disorders including alcohol and cannabis dependency;

personality disorder Not Otherwise Specified (NOS); major depressive disorder; anxiety disorder NOS; paranoid personality disorder, posttraumatic stress disorder, chronic; and delusional disorder, persecutory type. (Tr. 10, 180, 211, 263, 266.) Physicians have determined his Global Assessment of Functioning (GAF) score to range from 40 to 50.[1] (Tr. 175, 217, 263, 266.)

Martinez stated in application documents and at the hearing that he was depressed; had difficulty controlling anger; experienced difficulty getting along with people; "ran away" his friends; felt the "world crumbling all around"; indicated that non-specified persons intentionally caused him stress and "wore [him] out"; and that things that upset him the most were false accusations and lies. (Tr. 94, 96, 99, 324.) It is unclear from the medical records when Martinez's emotional problems first surfaced, but his problems with paranoia and delusional thinking are attributed to a situation that occurred with employees of the La Joya Independent School District in Mission, Texas. (*See* Tr. 175, 215, 266.)

Martinez explained to physicians that school officials mistreated his children because of a personal vendetta against him which began thirty years earlier when he was a student in the school district and intervened in a situation to stop the principal's brother from abusing a small child. (Tr. 175.) He claimed that in 1997-98 three coaches at the elementary school mistreated and assaulted his son, who is learning disabled, and that the school principal

---

[1] A GAF score is an assessment of an individual's psychological, social, and occupational functioning based on a hypothetical continuum of mental health and mental illness. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 2000) (DSM-IV). An individual assigned GAF scores ranging from 40 to 50 would be expected to experience serious to major impairments in social and occupational functioning. *Id.*

2

mentally abused the child. (Tr. 175, 215.)

Martinez claimed that he filed criminal charges against the coaches and principal, that the charges were dropped, and that he was therefore forced to initiate his own investigation. He claimed that police had tampered with evidence, that a report from the Texas Department of Health and Safety had been changed, and that an attorney for the school district had lied. (*Id.*) According to Martinez, a restraining order was entered in 1999 which prohibited him from appearing near the school district and its teachers and coaches. He appealed the entry of the restraining order but was unsuccessful; he believed that "they fixed the court" and that a judge mishandled the case. (Tr. 175-76, 215.) In sum, Martinez believed that employees of the school district, the city manager, the district attorney, the city police, and judges conspired against him. (Tr. 215.) He claimed, however, that he "had gotten" some of the employees of the school district – the district had terminated the employment of one of the coaches, a superintendent, and six other employees. (Tr. 176, 215.)

Although the situation with the school district employees occurred in the late 1990's and Martinez and his family subsequently moved to Lubbock, Texas, Martinez continued an obsession with the events that occurred in Mission, Texas, and reported to mental health providers in October 2001, July 2002, and May 2004, that his problems of depression, stress, and anxiety stemmed from those events and continued to plague him. (Tr. 175-80, 215-18, 263.) A therapist at Texas Tech University reported that Martinez continued to focus his efforts on rectifying the past events and proving to others that the events transpired. (Tr. 265.) He reported new allegations from Martinez including his belief that police

3

kidnapped his daughter and held a gun to her head, that his son had been suicidal because of the events in Mission, Texas, and that he believed that his own medical problems could be attributed to him swimming in chemicals as a child. (Tr. 266.) The therapist believed that Martinez exhibited delusions of persecution, citing to Martinez's allegation that "he was 'pulled over' by a police officer" which he believed was a result of him being "set up" by a local judge. (*Id*.) Although the therapist initially believed that Martinez suffered from posttraumatic stress syndrome and was not delusional, he later noted that Martinez insisted on showing him documentation to verify his allegations and that as rapport increased, Martinez's claims of persecution became increasingly delusional. (Tr. 265, 268.) At that time it was suspected that Martinez suffered from delusional disorder, persecutory type. (Tr. 266, 268.)

## II.  The Commissioner's Decision

The Administrative Law Judge (ALJ) determined that Martinez was capable of performing light exertional activity with restrictions that would accommodate his physical and mental impairments. (Tr. 20.) In regard to the impact of Martinez's mental impairments, the ALJ determined that he was slightly impaired in his ability to understand, remember, and carry out short, simple instructions; moderately restricted in his ability to understand and remember detailed instructions; markedly limited in his ability to carry out detailed instructions; and slightly impaired in his ability to make work-related decisions. (*Id*.) In regard to the impact of his mental impairments on his ability to work with others, the ALJ determined that Martinez was able to respond appropriately to supervision, co-workers, and

work pressures; slightly impaired in his ability to interact appropriately with the public and to respond appropriately to changes in work settings; and moderately restricted in his ability to interact appropriately with supervisors and co-workers. (Tr. 20-21.)

The ALJ stated that for large periods of time Martinez's mental functioning was adversely impacted by use of illegal drugs and by lack of appropriate treatment and that Martinez's ability to function, absent the use of drugs and alcohol and with appropriate treatment, was accurately reflected in his residual functional capacity determination. (Tr. 21.) Based on testimony from a vocational expert and using the Medical-Vocational Guidelines as a framework for decision-making, he determined that Martinez could work as an office helper and a small products assembler but that because of Martinez's need to alternate between sitting and standing, the number of jobs which exist in these professions that Martinez could perform was reduced by fifty percent. (Tr. 24.)

### III.   Martinez's Arguments

Martinez argues that the Commissioner's decision that he is not disabled is incorrect and contends that the Appeals Council failed to properly consider evidence he presented after the hearing and that the ALJ erred in determining his residual functional capacity and in determining that he could meet the requirements of jobs identified by the vocational expert.

### IV.   Discussion

Martinez submitted to the Appeals Council a document from his treating psychologist at Texas Tech University dated April 5, 2005, which includes a summary of his treatment and psychiatric diagnoses. (Tr. 10.) The psychologist noted that the Texas Tech Department of

5

Psychology had provided treatment for Martinez on a weekly basis since April 2004, that Martinez's principal diagnosis, delusional disorder, persecutory type, was the impetus for his "difficulties of poor functioning"; that he was also diagnosed with posttraumatic stress disorder and partner relational problem; and that he had been assigned a current GAF of 40. (*Id.*)

Martinez argues that the new evidence demonstrates that his mental impairments meet the criteria of a listed impairment in the Commissioner's regulations. He further argues that the Appeals Council's consideration of the new evidence is inadequate, pointing out that the psychologist's report is not mentioned in the notice of denial of review and that this was error requiring remand. He cites *Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005) in support of his arguments.

Under *Higginbotham*, the evidence Martinez submitted to the Appeals Council is part of the Commissioner's final decision and subject to the court's substantial evidence review. 405 F.3d at 337-38. The Appeals Council noted that it had considered the reasons Martinez disagreed with the ALJ's decision and found that "this information does not provide a basis for changing [the] decision." (Tr. 4-5.) Although the Appeals Council could have been more clear as to the "information" it considered, the court should assume the Appeal's Council considered the new evidence.[2]

---

[2] It should be noted that although the Appeal's Council in *Higginbotham* included a brief notation that it had reviewed the additional evidence (similar to the notation provided by the Appeals Council in this case), the Fifth Circuit Court of Appeals did not remand the case on that ground. 405 F.3d at 337-38. Nothing in *Higginbotham* requires the court to remand a claimant's case based on the fact that the Appeals Council did not thoroughly discuss new evidence. Rather, the decision in *Higginbotham* put to rest questions concerning whether an Appeals Council's denial of review is subject

On the other hand, remand should issue for further consideration of the new evidence. The Fifth Circuit Court of Appeals has looked with disfavor and remanded decisions in which the Appeals Council provided only a cursory review of new evidence that might have changed the ALJ's decision. *See Smith v. Schweiker*, 646 F.2d 1075, 1082 (5th Cir. 1981); *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980); *Higginbotham*, 405 F.3d at 334. In this case, the new evidence might have changed the ALJ's decision.

First, the new evidence may establish that Martinez's delusional disorder meets the criteria of Listing 112.03, the listing for schizophrenic, delusional (paranoid), schizoaffective, and other psychotic disorders. 20 C.F.R. pt. 404, subpt. P. app. 1 § 112.03. The last evidence before the ALJ regarding Martinez's treatment for his mental impairments was dated July 14, 2004. (Tr. 266-67.) That evidence indicates that Martinez's psychologists suspected that he suffered from the disorder but none of the evidence before the ALJ included a confirmed diagnosis. The new evidence confirms the diagnosis and establishes that Martinez suffered from delusions of the persecutory type. One of the criteria in Listing 112.03 requires that the claimant suffer from delusions for at least six months. 20 C.F.R. pt. 404, subpt. P. app. 1 § 112.03 (A). The new evidence indicates that Martinez experienced delusions for more than six months. (Tr. 10, 266-67.)

The new evidence also demonstrates that after the date of the last evidence in the record that the ALJ considered, Martinez continued to undergo psychological treatment for

---

to judicial review and directed that a reviewing court must consider new evidence submitted to the Appeals Council and the Appeals Council's review of the evidence. 405 F.3d at 337-38. Therefore, to the extent that Martinez contends that the Appeals Council must, in every case, provide a detailed analysis of new evidence, his contention must be rejected.

nine months, and despite continued treatment, his mental impairments did not improve. In fact, the evidence suggests that his emotional and mental condition declined. The last evidence before the ALJ included a report that Martinez's GAF score was 50 and the new evidence shows that his GAF score was 40.[3] The evidence also shows that he continued to suffer from delusional disorder and other psychological disorders and that he exhibited "poor functioning." (Tr. 10, 266.)

This evidence might have changed the ALJ's findings regarding Martinez's residual functional capacity and his determination that Martinez could work. The ALJ stated that Martinez's mental functioning was adversely impacted by his use of illegal drugs and lack of appropriate treatment. (Tr. 21.) He further stated that his residual functional capacity determination accurately reflected Martinez's ability to function, absent the use of drugs and alcohol and with appropriate treatment. (*Id*.) The ALJ's statement indicates that he believed that with abstinence from drugs and alcohol and with appropriate treatment, Martinez could work with the limitations included in his residual functional capacity finding. The new evidence demonstrates, however, that Martinez's condition did not improve despite almost one full year of treatment. (Tr. 10, 263.) Further, the GAF score of 40 assigned to Martinez in the new evidence and the diagnosis of delusional disorder indicate that he would experience a major impairment in the ability to work, a lack of occupational functioning, and

---

[3] An individual with a GAF score of 50 would be expected to experience serious impairments in social and occupational functioning, while an individual with a GAF score of 40 would be expected to suffer from more severe symptoms and would be expected to experience major impairments in social and occupational functioning. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 2000) (DSM-IV).

difficulties in working and interacting appropriately with co-workers and supervisors. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34, 323-25. This evidence detracts from the ALJ's determination that Martinez was only moderately restricted in his ability to interact appropriately with supervisors and co-workers.

The new evidence provides insight into the severity and limitations caused by Martinez's mental impairments and his response to clinical treatment. Therefore, it should have been considered in deciding the merits of his claim. Because neither the ALJ nor the Appeals Council analyzed the additional evidence, the court should remand Martinez's case for consideration of the entire record, including the additional evidence submitted to the Appeals Council. *Higginbotham*, 405 F.3d at 337; *Smith*, 646 F.2d at 1082; *Epps*, 624 F.2d at 1273.

## V. **Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand this case for further administrative proceedings.

## VI. **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: March 27, 2006.

NANCY M. KOENIG
United States Magistrate Judge